IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AGS LIGHTING MANAGEMENT LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-141-MN |
| | ) | |
| JESCO LIGHTING GROUP LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF AGS LIGHTING MANAGEMENT LLC'S**
**<u>RESPONSE IN OPPOSITION TO JESCO'S MOTION TO DISMISS</u>**

OF COUNSEL:
Kevin E. Cadwell
Lisa M. Thomas
Brad S. Bowling
CADWELL CLONTS REEDER & THOMAS LLP
5373 W. Alabama Street, Suite 457
Houston, TX 77056
(713) 360-1560

Dated: April 10, 2025

Andrew E. Russell (No. 5382)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
lgellar@shawkeller.com
*Attorneys for Plaintiff AGS Lighting
Management LLC*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

III.  SUMMARY OF THE ARGUMENT ................................................................. 2

IV.   STATEMENT OF FACTS .................................................................................. 3

V.    LEGAL STANDARD ......................................................................................... 6

VI.   ARGUMENTS ..................................................................................................... 7

    A.  AGS Lighting Sufficiently Pleaded Direct Infringement ............................. 7

        1.    AGS Lighting Sufficiently Pleaded a Plausible Claim for Direct
             Infringement by Identifying Jesco Products That Meet Every Element of at
             Least Claim 1 of the '302 Patent .................................................................. 7

        2.    AGS Lighting Has Provided Factual Support Regarding the First and
             Second Plurality of LEDS Allegations ....................................................... 9

        3.    AGS Lighting Has Provided Factual Support for its "Second Switch"
             Allegations ................................................................................................. 10

        4.    Jesco's Cited Cases Are Inapposite .......................................................... 11

    B.  The Complaint Sufficiently Alleges Induced Infringement ....................... 13

        1.    The Complaint Sufficiently Alleges Jesco's Pre-Suit Knowledge to
             Support Claims of Induced Infringement ................................................... 13

        2.    The Complaint Sufficiently Alleges Jesco's Specific Intent to Induce
             Infringement .............................................................................................. 15

    C.  The Complaint Sufficiently Alleges Willful Infringement ........................ 16

VII.  CONCLUSION ................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AgroFresh Inc. v. Hazel Techs., Inc.,*
   No. 18-1486 (MN), 2019 U.S. Dist. LEXIS 70570 (D. Del. Apr. 25, 2019) .................. 7, 8, 9

*Align Tech., Inc. v. 3Shape A/S,*
   339 F. Supp. 3d 435 (D. Del. 2018) ............................................................... 6, 13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................... 6

*Bausch & Lomb Inc. v. SBH Holdings LLC,*
   *No. 20-1463-LPS*, 2022 U.S. Dist. LEXIS 51969 (D. Del. Mar. 23, 2022) .................... 12, 15

*Bell Atl. Corp. v. Twombly,,*
   550 U.S. 544 (2007) ..................................................................................... 6

*bioMérieux, S.A. v. Hologic, Inc.,*
   No. 18-21, 2018 U.S. Dist. LEXIS 163996 (D. Del. Sept. 25, 2018)...................................... 10

*Bos. Sci. Corp. v. Nevro Corp.,*
   415 F. Supp. 3d 482 (D. Del. 2019) ............................................................... 12

*Bot M8 LLC v. Sony Corp.,*
   4 F.4th 1342 (Fed. Cir. 2021) ....................................................... 6, 7, 12, 15

*Cambria Cty. Ass'n for the Blind & Handicapped, Inc. v. Affordable Wire Mgmt., LLC,*
   No. 23-cv-80-SRF, 2024 U.S. Dist. LEXIS 57313 (D. Del. Mar. 28, 2024) .................. 14, 15

*CellControl, Inc. v. Mill Mt. Capital, LLC,*
   No. 7:21-cv-246, 2022 U.S. Dist. LEXIS 35682 (W.D. Va. Feb. 28, 2022) ........................ 18

*Deere & Co. v. AGCO Corp.,*
   No. 18-827-CFC, 2019 U.S. Dist. LEXIS 25885 (D. Del. Feb. 19, 2019) ............................ 14

*DermaFocus LLC v. Ulthera, Inc.,*
   201 F. Supp. 3d 465 (D. Del. 2016) ............................................................... 6, 10

*Disc Disease Sols. Inc. v. VGH Sols., Inc.,*
   888 F.3d 1256 (Fed. Cir. 2018) ....................................................... 6, 7, 8, 11

*DoDots Licensing Sols. LLC v. Lenovo Holding Co.,*
   No. 18-098 (MN), 2018 U.S. Dist. LEXIS 213202 (D. Del. Dec. 19, 2018) ........................ 7, 8

*DoDots Licensing Sols. LLC v. Lenovo Holding Co.,*
   No. 18-098 (MN), 2019 U.S. Dist. LEXIS 116655 (D. Del. Jul. 12, 2019) ........................ 13

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.,*
   700 F. Supp. 3d 189 (D. Del. 2023) ............................................................... 17

*Dynamic Data Techs. v. Google LLC*,
 No. 19-1529-CFC, 2020 U.S. Dist. LEXIS 46285 (D. Del. Mar. 18, 2020) ................... 17, 18

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
 946 F.3d 1367 (Fed. Cir. 2020) ............................................................................... 16

*Groove Digital, Inc. v. Jam City, Inc.*,
 No. 18-01331-RGA, 2019 U.S. Dist. LEXIS 13563 (D. Del. Jan. 29, 2019) ........................ 11

*HSM Portfolio LLC v. Fujitsu Ltd*,
 No. 11-770-RGA, 2014 U.S. Dist. LEXIS 125500 (D. Del. Sept. 9, 2014) ........................ 16

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
 681 F.3d 1323(Fed. Cir. 2012) ............................................................................... 9, 13

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997) ................................................................................. 6

*Jackson v. Seaspine Holdings Corp.*,
 No. 20-1784-RGA, 2022 U.S. Dist. LEXIS 25894 (D. Del. Feb. 14, 2022) ................... 14, 16

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
 869 F.3d 1372 (Fed. Cir. 2017) ............................................................................... 9

*Nalco Co. v. Chem-Mod, LLC*,
 883 F.3d 1337 (Fed. Cir. 2018) ............................................................................... 6, 9, 15

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
 852 F. Supp. 2d 470–76 (D. Del. 2012) .................................................................. 15

*Rally AG LLC v. Apple, Inc.*,
 No. 1:23-cv-01106, 2024 U.S. Dist. LEXIS 210927 (D. Del. Nov. 20, 2024) ...................... 10

*Sapphire Crossing LLC v. Robinhood Mkts., Inc.*,
 No. 18-1717-MN-CJB, 2021 U.S. Dist. LEXIS 8256 (D. Del. Jan. 15, 2021) ................ 18, 19

*St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*,
 No. 10-425- LPS, 2012 U.S. Dist. LEXIS 42749 (D. Del. Mar. 28, 2012) ........................ 17

*Valmont Indus. v. Lindsay Corp.*,
 No. 15-042-LPS-CJB, 2018 U.S. Dist. LEXIS 9542 (D. Del. Jan. 22, 2018) ...................... 18

*Vervain, LLC v. Micron Tech., Inc.*,
 No. 6:21-cv-00487-ADA, 2022 U.S. Dist. LEXIS 54 (W.D. Tex. Jan. 3, 2022) ................... 12

## I.    INTRODUCTION

Jesco gives short shrift to the complaint, ignoring its detailed allegations while alleging a lack of proof.  But at the pleading stage, the level of proof Jesco demands is not required.  AGS Lighting has included more than sufficient factual allegations that explain Jesco's infringement based on a representative product with supporting materials and images from Jesco's website and publicly available documentation and videos.  At this stage, AGS Lighting has plausibly pleaded a claim of direct infringement sufficient to put Jesco on notice of its claim.

Jesco's arguments regarding indirect and willful infringement fare no better.  At the crux of Jesco's indirect and willful infringement argument is the idea that the direct infringement allegations are lacking, which they are not. Next, Jesco wholly dismisses AGS Lighting's pre-suit notice letter because the letter did not provide Jesco with an element-by-element analysis of Jesco's infringement. The notice letter dated October 31, 2023, which is an exhibit to the complaint, specifically identified the patent-in-suit and the product line that AGS Lighting accuses of infringement.  But Jesco would require that this pre-suit notice letter go further, claiming that AGS Lighting should have specifically explained why and how it believes that Jesco's products infringe. Jesco suggests that without such detailed infringement contentions, it is incapable of understanding how the specifically identified product line infringes one specifically identified patent. But the law does not require what Jesco asks. Viewed in the light most favorable to AGS Lighting, the allegations in the complaint are sufficient to plead inducement of infringement and willful infringement.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

AGS Lighting commenced this proceeding on February 4, 2025 by filing a complaint alleging that Jesco directly, indirectly and willfully infringes U.S. Patent No. 11,751,302 (the '302 Patent).  D.I. 1.  On March 27, 2025, pursuant to Fed. R. Civ. P. 12(b)(6), Jesco moved to

dismiss all claims in the complaint. D.I. 10.  Jesco has not yet answered.  The Court has not
held a scheduling conference, and no discovery has been taken.

### III.    SUMMARY OF THE ARGUMENT

1.    AGS Lighting has met the requisite pleading standard for alleging a cause of action
for direct infringement of U.S. Patent No. 11,751,302 (the '302 patent).  AGS Lighting's
allegations regarding Jesco's LIN product line, accepted as true, place Jesco on notice of what
activity is being accused of infringement.  AGS Lighting's complaint—specifically including
paragraphs 18-29—more than sufficiently puts Jesco on notice of what activity is being accused
of direct infringement. AGS Lighting identifies what claims are being infringed and explains in
multiple paragraphs how each limitation of claim 1 is found in the accused products. Under
controlling law, AGS Lighting has sufficiently pleaded a plausible claim for direct infringement.

2.    AGS Lighting has met the requisite pleading standard for alleging a cause of action
for indirect infringement.  For AGS Lighting's inducement claim to meet the pleading standard,
AGS Lighting must plead that some party committed direct infringement and that Jesco had
knowledge that the patent-in-suit existed and specifically intended that party to infringe. AGS
Lighting has satisfied that standard by (1) asserting that Jesco's customers directly infringed the
patent-in-suit, and (2) alleging that Jesco knew of the patent-in-suit after it received AGS
Lighting's notice letter and specifically intended its customers to infringe.

3.    AGS Lighting has met the requisite pleading standard pursuant to Federal Rule of
Civil Procedure 8 for alleging causes of action for willful infringement.  For a claim of willful
infringement, AGS Lighting must sufficiently plead that Jesco had actual knowledge of the
patent-in- suit, or that it should have known of the patent-in-suit.  AGS Lighting has met this
standard because it pled that Jesco had actual knowledge of the patent and its infringement based
on the notice letter.  As such, there is no basis for Jesco's arguments that AGS Lighting did not

sufficiently plead willful infringement.

    4.    If the Court rules that any claims are not adequately pleaded, AGS Lighting requests an opportunity to amend its complaint.

## IV.    STATEMENT OF FACTS

AGS Lighting is a Texas limited liability company that is part of a family of companies that sells light-emitting diode (LED) lighting technology.  LED lighting technology has evolved since its initial inception and use.  D.I. 1 ¶12-13.  Earlier LED lighting was designed to have only one hue of light (like daylight, bright white, or soft white).  D.I. 1 ¶13.  This hue is referred to as the "color temperature" and is expressed in units of Kelvin (like 3000K, 3500K, and 4000K).  *Id.*  Also, earlier LED lighting technology came with a set level of brightness, which is typically expressed in lumens, and was manufactured in custom lengths to meet the specific needs of an application.  *Id.*

For specific applications, customers desired to have the ability to select specific color temperature, brightness, and unit length, but that led to increased work in the manufacturing and storing of multiple variants of such products.  *Id.* at ¶14.  This also led to increasing demand for warehouse storage to meet the quick turnaround times for customers.  *Id.*

Recognizing these limitations, the inventors of the '302 patent found that with careful engineering, linear light fixtures could be made with selectable color temperature and brightness.  *Id.* at ¶15.  But that did not completely solve the problem because often, long linear runs needed to be used in commercial spaces where it was obvious when color temperature was slightly different between fixtures.  *Id.*  For example, if the power supply was incorrect, this could lead to a combination of fixtures with a noticeably different color temperature, which would not be visually pleasing.  *Id*.

The '302 patent generally relates to a linear LED lighting apparatus with a first plurality of

3

LEDs with a first color temperature and a second plurality of LEDs with a second color temperature. *Id.* ¶18. The linear lighting apparatus has a driver circuit that outputs a plurality of currents to the first plurality of LEDs, the second plurality of LEDs, or both. *Id.* In this way, the '302 patent provides a modular linear lighting apparatus with both adjustable color temperature and brightness. *Id.*

As the '302 patent teaches, the liner light fixture may have two distinct strings of LEDs, each with a different color temperature. *Id.* ¶19. For example, the '302 patent describes an embodiment where a first LED string has a color temperature of 3000 Kelvin, and the second LED string has a color temperature of 4000 Kelvin. D.I. 1-1, 4:54-60, 8:5-11. The linear light fixture of the '302 patent includes a switch assembly that may direct current to one or both of the strings of LEDs, thereby changing the color temperature emitted from the light fixture. D.I. 1-1, 8:33-40. For example, the '302 patent notes that a color switch may have three positions that respectively correspond to color temperatures of 3000K, 3500K, and 4000K, and that depending on the position of the switch assembly, the color temperature produced may be 3000K (if the current output of the driver circuit is directed to one LED string), 4000K (if the current output of the driver circuit is directed to the other LED string), or 3500K (if the current is directed to both LED strings). D.I. 1-1, 5:9-14, 8:35-40. The '302 patent further teaches that "the switch assembly may include an additional switch to control a luminance or a lumen level output by the linear LED light fixture." D.I. 1-1, 5:16-18. The '302 patent explains that "[t]he lumen level output of an LED may depend on the amount of current it receives. That is, as the current provided to the LED increases, the amount of luminance produced by the light output by the respective LED increases." D.I. 1-1, 5:19-23. In this way, the '302 patent teaches a linear lighting fixture with a driver circuit to control both the color temperature and lumen output (brightness) of the lighting fixture. D.I. 1 ¶19. The

'302 patent further explains that the switching of both color temperature and lumen output allows for a linear light fixture maker to manufacture "modules with various lengths such that each module may coordinate with other modules to form larger modules or operate separately as independent light fixtures."  D.I. 1 ¶20 (quoting D.I. 1-1, 5:27-32).

Claim 1 of the '302 patent is directed to a linear LED lighting apparatus, is structural in nature, and reads as follows:

> 1. A linear light-emitting diode (LED) lighting apparatus, comprising:
>
> an array of light emitting diodes (LEDs) having a first length, wherein the array of LEDs comprises:
>
>> a first plurality of LEDs configured to produce a first light having a first color temperature, wherein the first plurality of LEDs aligns within a first linear shape;
>>
>> a second plurality of LEDs configured to produce a second light having a second color temperature different from the first color temperature, wherein the second plurality of LEDs align within a second linear shape;
>
> a driver circuit configured to output a plurality of currents;
>
> a switch assembly configured to couple to the driver circuit, wherein the switch assembly comprises:
>
>> a first switch configured to cause the driver circuit to output one of the plurality of currents;
>>
>> a second switch configured to cause the one of the plurality of currents to couple to the first plurality of LEDs, the second plurality of LEDs, or both; and
>
> wherein the linear LED lighting apparatus is configured to electrically couple to an additional linear LED lighting apparatus having a second length different than the first length by a scale factor, wherein the additional linear LED lighting apparatus is configured to produce a third light having the first color temperature via a third plurality of LEDs or a fourth light having the second color temperature via a fourth plurality of LEDs.

5

## V.    LEGAL STANDARD

This Court is familiar with the standard under *Iqbal* and *Twombly* that a complaint must set forth enough facts to "state a claim to relief that is plausible on its face," and that determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of patent litigation, and of relevance here, "it is logical to presume that a defendant has greater access to and, therefore, more information about its accused [product]" and the determination of pleading sufficiency should account for "whether the information demanded by defendant is in the public domain and, therefore, reasonably available to plaintiff." *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469-70 (D. Del. 2016).  Importantly, a plaintiff is not required to "prove its case at the pleading stage." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). In considering a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 440-41 (D. Del. 2018) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)). Thus, to be sufficient, the complaint must merely "place the potential infringer . . . on notice of what activity . . . is being accused of infringement." *Nalco*, 883 F.3d at 1350 (alteration in original); *see also Disc Disease Sols. Inc. v. VGH Sols.*, Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (specific facts not necessary, only fair notice of the claim and the ground upon which it rests).

"There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  But on the other hand, a plaintiff need not necessarily "plead infringement on an element-by-element basis." *Id* at 1352. The United States Court of Appeals

for the Federal Circuit has explained that "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1353.

## VI.   ARGUMENTS

### A.   AGS Lighting Sufficiently Pleaded Direct Infringement

Following the Federal Circuit's guidance, this Court has found that a plaintiff plausibly pleaded an infringement claim where the complaint specifically identified the infringing product and alleged that it practices each limitation of at least one claim in the relevant patents. *AgroFresh Inc. v. Hazel Techs., Inc.*, No. 18-1486 (MN), 2019 U.S. Dist. LEXIS 70570, at *5-6 (D. Del. Apr. 25, 2019) (finding complaint sufficient to put defendant on notice where accused product and claims were identified and the complaint alleged how the accused product met the limitations of the claim); *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-098 (MN), 2018 U.S. Dist. LEXIS 213202, at *7-8 (D. Del. Dec. 19, 2018)(finding direct infringement allegations based on "use" sufficient when plaintiff alleged that the defendants used the accused product and that the use "purportedly results in performance of all steps of claim 1"); *see also Disc Disease*, 888 F.3d at 1260 (finding complaint alleged plausible claim for direct infringement where it specifically identified accused products by name and photographs, and alleging that the accused products met "each and every element of at least one claim [of the asserted patent], either literally or equivalently"). AGS Lighting has done just that.

#### 1.   AGS Lighting Sufficiently Pleaded a Plausible Claim for Direct Infringement by Identifying Jesco Products That Meet Every Element of at Least Claim 1 of the '302 Patent

Under these controlling standards, AGS Lighting's complaint sufficiently pleads a plausible claim for direct infringement by specifically identifying representative accused products

that meet each limitation of at least claim 1 of the '302 patent.  AGS Lighting alleges that "Jesco is offering modular linear lighting fixtures with adjustable color temperature and brightness ('Accused Jesco Products'). As one example, Jesco is offering the LIN SLIM lighting fixtures for sale in the United States and/or selling the LIN SLIM lighting fixtures in the United States based on Jesco's website and Jesco's marketing materials."  D.I. 1 ¶23. Embedded in the complaint are photos of representative Accused Jesco Products, links to Jesco's videos of said products discussing their operation, and excerpts from Jesco's product literature.  D.I. 1, ¶23-29.  For example, an exemplary page from the Jesco product literature touts the ability to customize the color temperature (between 3000K, 3500K, and 4000K) and the brightness of the fixture using two on-board switches and to create long linear runs with different lengths of fixtures.  D.I. 1-2 at 3. AGS Lighting also alleges that the specifically-identified Jesco Products meet each limitation of at least claim 1 of the '302 patent. D.I. 1, ¶23-29 (9 pages explaining how the Accused Jesco Products meet every limitation of claim 1 of the '302 patent with photos, videos, and explanatory parentheticals).

Jesco does not contest that AGS Lighting has specifically identified accused infringing products that it alleges satisfies at least claim 1 of the asserted '302 patent.  Indeed, Jesco's effective admission of that point ends the inquiry into the sufficiency of AGS Lighting's claim for direct infringement under controlling law in the Federal Circuit and this District. *See Disc Disease*, 888 F.3d at 1260; *AgroFresh,* 2019 U.S. Dist. LEXIS 70570, at *5-6; *DoDots*, 2018 U.S. Dist. LEXIS 213202 at *7-8.

Instead, Jesco argues that AGS Lighting's allegations are deficient because AGS does not go further and prove those allegations with "facts." *See* D.I. 11 at 8 ("Plaintiff pleads no facts rendering plausible that the claimed structural limitations are present."). Jesco's arguments in its

motion to dismiss go the ultimate burden of proof that each element is met. But that is not what is required at the pleading stage. Contrary to Jesco's argument, "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Nalco*, 883 F.3d at 1350 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)). Thus, there is no requirement that AGS Lighting proves its case at the pleading stage; rather, a complaint is sufficient if it places the alleged infringer on notice of what activity is being accused of infringement. *See AgroFresh*, 2019 U.S. Dist. LEXIS 70570, at *4 (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). This alone warrants denial of Jesco's motion.

### 2. AGS Lighting Has Provided Factual Support Regarding the First and Second Plurality of LEDS Allegations

Regardless, AGS Lighting has provided factual support for its allegations. As to the "first plurality of LEDS" and "second plurality of LEDS" limitations, Jesco understands what is being accused, but merely disputes it. D.I. 11 at 8 n.1. Jesco goes so far to say that no facts are pled, but a very specific fact is indeed pled—the very image of its product from its own literature. Contrary to Jesco's statement, there are "substantive pleadings regarding the claimed arrangement," namely the image and explanation:



Ex. 5 at 1.

*[for example, on information and belief, each of the Accused Jesco Products has a first plurality of LEDs with a color temperature of 3000K and in a first linear shape. This is supported by Jesco technical documentation.]*

> JESCO's **LIN Slim** Series is a versatile linear lighting system with a modern aesthetic, offering a uniform light that meets a variety of design needs, whether the project calls for pendant mounting, wall mounting, recessed mounting, or a combination thereof. The LIN Series of extra-rigid sleek aluminum housing in 8ft, 6ft, 4ft, and 2ft lengths, may be easily connected to form long linear runs. Straight runs can be combined with preassembled lit-connectors in X, L, T, V, and Y configurations to create intricate patterns and forms. An easily accessible, on-board CCT and a wattage toggle switch allow installer to select and later change between 3000K/3500K/4000K color temperatures and 7 steps of wattage DIRECT and INDIRECT control for desired lumen output for the application. An optional 80FT rollable opal polycarbonate lens offers seamless and perfect diffusion for joint linear fixtures.

Ex. 5 at 1.

**a second plurality of LEDs configured to produce a second light having a second color temperature different from the first color temperature, wherein the second plurality of LEDs align within a second linear shape;**

*[for example, on information and belief, each of the Accused Jesco Products has a second plurality of LEDs with a color temperature of 4000K and in a second linear shape. That the second plurality of LEDs have a color temperature of 4000K is shown because that is the maximum color temperature output of the Accused Jesco Products and, on information and belief, color temperatures between the color temperatures of the first and second plurality of LEDs are produced using a combination of the first and second plurality of LEDs. This is shown by the same Jesco documentation shown above for the first plurality of LEDs.]*

D.I. 1 at 10. Those allegations explain how claim 1 is met by the accused product. Those well-pleaded allegations "on information and belief" explain AGS Lighting's understanding of the inner workings of Jesco's product based on publicly available information. "Because [a] Plaintiff is not required at the pleadings stage to have full knowledge of how [the Accused Product] works, these well-pleaded allegations drawn from Plaintiff's 'information and belief' are sufficient for Plaintiff's infringement claim to survive a motion to dismiss." *Rally AG LLC v. Apple, Inc.*, No. 1:23-cv-01106, 2024 U.S. Dist. LEXIS 210927, at *30 (D. Del. Nov. 20, 2024) (citing *DermaFocus*, 201 F. Supp. 3d at 469 n.7 (D. Del. 2016) and *bioMérieux, S.A. v. Hologic, Inc.*, No. 18-21, 2018 U.S. Dist. LEXIS 163996, at *4 (D. Del. Sept. 25, 2018)).

### 3.    AGS Lighting Has Provided Factual Support for its "Second Switch" Allegations

Jesco's argument about the "second switch" limitation likewise does not warrant dismissal. Importantly, Jesco does not argue that AGS Lighting's allegations are not sufficient to put it on

notice of what activity is being accused of infringement. Instead, Jesco argues that pleading that the "second switch [is] configured to cause the one of the plurality of currents to couple to the first plurality of LEDs, the second plurality of LEDs, or both" lacks facts. *See* D.I. 11 at 9.

But Jesco is mistaken. "To satisfy the *Iqbal* pleading standard in a patent case, '[s]pecific facts are not necessary.'" *Groove Digital, Inc. v. Jam City, Inc.*, No. 18-01331-RGA, 2019 U.S. Dist. LEXIS 13563, at *8-9 (D. Del. Jan. 29, 2019) (quoting *Disc Disease*, 888 F.3d at 1260)). Even so, AGS Lighting does plead specific facts, and the disclosure of the '302 patent aligns with those very facts. For example, AGS Lighting included an image of Jesco's color-selectable switch and included paragraphs explaining its understanding of how the switch operates. D.I. 1 at ¶23-25, 28 (at 10-11). And AGS Lighting explained how having a color-selectable temperature switch leads to the conclusion that the "second switch limitation" is met. "For example, the '302 patent describes an embodiment where a first LED string has a color temperature of 3000 Kelvin and the second LED string has a color temperature of 4000 Kelvin. The linear light fixture of the '302 patent includes a switch assembly that may direct current to one or both of the strings of LEDs, thereby changing the color temperature emitted from the light fixture." D.I. 1 ¶19. Like the embodiment in the patent, the representative accused product also has a switch with selectable color temperature settings of 3000K, 3500K, and 4000K (with the 3500K color temperature in between plausibly being created by directing the current to both the 3000K and 4000K color temperature LEDs). D.I. 1 ¶28 (at 10). This is sufficient to put Jesco on notice of its accused infringement and renders plausible that the "second switch" limitation is met.

### 4.    Jesco's Cited Cases Are Inapposite

The cases cited by Jesco are inapplicable to these circumstances. For example, in *Bot M8*, the Federal Circuit found that as to one patent the pleadings were insufficient because Plaintiff's factual allegations in the first amended complaint were inconsistent with and contradicted

infringement. *Bot M8*, 4 F.4th at 1354. The panel also found that as to a second patent, because the allegations only tracked the claim language, there was no plausible allegation that "gaming information and a mutual authentication program [were] stored together on the same memory." *Id.* at 1355. *Boston Scientific* is equally inapplicable because there, the plaintiff "assert[ed] without explanation [in the first amended complaint] that the accused products meet each element of at least one claim of the asserted patent…[and failed] to show *how* the accused products plausibly read on the asserted claim elements." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019). Rather, the plaintiff attached 144 pages of exhibits without explanation, and the Court found that "[a] defendant should not be required to comb through 144 pages of exhibits to understand the bases of a plantiff's claims." *Id.* at 490.  In *Vervain*, the Western District of Texas demanded "a higher level of pleading" because of the complexity and materiality of the claims and noted that "[a]ttaching photos of [the accused product] or its packaging would do little good here where the claims are primarily directed to firmware operating upon nanometers-wide cells," something which could not be discerned from a photo.  *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-cv-00487-ADA, 2022 U.S. Dist. LEXIS 54, at *15-16 (W.D. Tex. Jan. 3, 2022).

Unlike in *Bot M8, Boston Scientific*, and *Vervain*, here, images of the accused product and citations to Jesco's own product literature and videos with parenthetical explanations describing AGS Lighting's understanding of how the product works are in the Complaint. And Jesco clearly understands the infringement theory from the allegations.  D.I. 11 at 8 n.1.  Given that the infringement theory is straightforward, the factual allegations and explanations are sufficient to put Jesco on notice of the nature of the accused infringement. *See Bausch & Lomb Inc. v. SBH Holdings LLC*, No. 20-1463-LPS, 2022 U.S. Dist. LEXIS 51969, at *6-7 (D. Del. Mar. 23, 2022)(finding complaint sufficiently pleaded direct infringement when accused products identified

and described, allegations of infringement were made, patent-in-suit attached to the complaint, and the infringement theory was straightforward). "To require anything more at this stage of the case would require the equivalent of infringement contentions, which is more than the law demands." *Align*, 339 F. Supp.3d at 446. Jesco's motion as to direct infringement should be denied.

### B. The Complaint Sufficiently Alleges Induced Infringement

Jesco argues that AGS Lighting's claims for induced infringement should be dismissed because (1) "without specific features or supporting evidence or even identification of the products accused, there is no practical way for Jesco to have the requisite pre-suit knowledge necessary for inducement"; and (2) it summarily claims that it had no "specific intent to cause another's infringement." D.I. 11 at 11. Neither argument is sufficient to dismiss AGS Lighting's inducement claim.

### 1. The Complaint Sufficiently Alleges Jesco's Pre-Suit Knowledge to Support Claims of Induced Infringement

AGS Lighting's October 31, 2023, letter established Jesco's pre-suit knowledge of the patent for inducement. D.I. 1-7. This Court has consistently recognized that to successfully plead claims for indirect infringement, a plaintiff must plead facts that support "an underlying act of direct infringement" and "must plead facts that plausibly support an inference that the accused inducer 'specifically intended [another] to infringe the [patent] and knew that the [induced] acts constituted infringement.'" *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-098 (MN), 2019 U.S. Dist. LEXIS 116655, at *6 (D. Del. Jul. 12, 2019) (quoting *In re Bill of Lading*, 681 F.3d at 1339 (alternation in original)). AGS Lighting sufficiently alleges inducement of infringement of the patent-in-suit under this standard. D.I. 1, ¶23-30; *Supra* Section VI.A (regarding direct infringement).

Jesco's argument that it had "no practical way" to have the requisite pre-suit knowledge

necessary for inducement because the letter did not have an identification of the accused products is unpersuasive. The notice letter **both** identified the patent-in-suit by number and noted that "its LIN product" may be infringing upon AGS Lighting's patent rights. D.I. 1-7. Jesco itself refers to the product line as "the LIN Series." D.I. 1-6 ("The LIN Series is a versatile linear lighting system."). Jesco cannot feign ignorance of the product accused of infringement when Jesco itself refers to the accused products by the very same name on its website.

This district has found assertions such as those in AGS Lighting's October 31, 2023, letter to be sufficient to allege knowledge of infringement. For example, in *Jackson v. Seaspine Holdings Corp.*, No. 20-1784-RGA, 2022 U.S. Dist. LEXIS 25894 (D. Del. Feb. 14, 2022), the plaintiff's letter "offer[ed] a license, identifi[ed] ten Asserted Patents, nam[ed] the accused Newport, Malibu, and Mariner systems, and provid[ed] notice of infringement." *Id*. at *12. Those assertions, the court decided, were "sufficient to plead [pre-suit] knowledge of the ten patents and their infringement." *Id*. In *Cambria Cty. Ass'n for the Blind & Handicapped, Inc. v. Affordable Wire Mgmt., LLC*, No. 23-cv-80-SRF, 2024 U.S. Dist. LEXIS 57313 (D. Del. Mar. 28, 2024), the plaintiff's letter adequately established knowledge of infringement by "specifically identifying the Asserted Patents and the allegedly infringing [products] and alleging that those products likely infringe the Asserted Patents." *Id.* at *6-7. That court was clear that "nothing more is required at this stage of the proceedings." *Id*. at *7.

AGS Lighting's notice letter is entirely distinguishable from the letter at issue in *Deere & Co. v. AGCO Corp.*, No. 18-827-CFC, 2019 U.S. Dist. LEXIS 25885 (D. Del. Feb. 19, 2019), cited by Jesco. In *Deere*, plaintiff failed to attach the pre-suit notice letter to the complaint or allege that it identified any alleged combination of infringing products and so was insufficient to inform the defendant that its "activities constituted a sufficient risk of infringement to make them cease those

14

activities." *Id.* at \*4, \*16. Again, that is not the case with AGS Lighting's notice letter that specifically identified the patent and the LIN product line of infringement.  D.I. 1-7.

Jesco's argument that the notice letter was insufficient because it lacks any description of how the LIN product infringes the patent-in-suit likewise fails.  An element-by-element infringement analysis is not required to provide notice for purposes of inducement at the pleading stage. *See Bausch & Lomb*, 2022 U.S. Dist. LEXIS 51969, at \*5 ("[A] plaintiff is not required to 'plead facts establishing that each element of an asserted claim is met.' The level of detail required for the complaint varies 'depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device.'" (quoting *Nalco*, 883 F.3d at 1350 and *Bot M8*, 4 F.4th at 1353)). The Court should decline Jesco's attempt to impose such a heavy burden before litigation even commences.

### 2.    The Complaint Sufficiently Alleges Jesco's Specific Intent to Induce Infringement

Courts will sustain a claim for induced infringement under the *Twombly/Iqbal* standards where the plaintiff has pled the existence of a direct infringer, the defendant's knowledge of the patent, and the defendant's specific intent to induce infringement.  *Netgear, Inc. v. Ruckus Wireless, Inc.*, 852 F. Supp. 2d 470, 475-76 (D. Del. 2012) (plaintiff sufficiently pled or otherwise plausibly inferred a direct infringer, defendant's knowledge of the patent-in-suit, and defendant's specific intent to induce the infringement "by its activities relating to the marketing and distribution" of its products).  "Allegations that a defendant induced its customers to infringe by selling components or materials with promotions and instructions for use are sufficient to state a claim at this stage of the proceedings."  *Cambria*, 2024 U.S. Dist. LEXIS 57313, at \*8; *see Bausch & Lomb*, 2022 U.S. Dist. LEXIS 51969, at \*7-8 (finding indirect infringement pleading sufficient

that alleged using compositions in the accused products in a specific way infringed the asserted patent and that the defendant knew of the patent and intentionally caused customers to infringe by selling compositions with promotions and instructions for use); *HSM Portfolio LLC v. Fujitsu Ltd*, No. 11-770-RGA, 2014 U.S. Dist. LEXIS 125500, at *8-9 (D. Del. Sept. 9, 2014) (explaining that the pleading must only establish a "reasonable potential" of induced infringement claim).

That is precisely what AGS Lighting alleges.  D.I. 1 ¶ 30 ("Jesco directs, instructs, and supports its customers, for using the Accused Jesco Products through personal sales, videos, and the installation guide shown above. Jesco knew or was willfully blind to the fact that its conduct would induce its customers to act in a manner that infringes the '302 patent in violation of 35 U.S.C. § 271(a).  As shown above, Jesco documentation and videos direct users to connect the Accused Jesco Products together in modular arrangements.  And Jesco documentation and videos direct users to deliver different amounts of current to the LED arrays of the Accused Jesco Products by adjusting one or both of the brightness and/or color temperature of the Accused Jesco Products.").  AGS Lighting went further and included links and citations to specific portions of the videos and documentation. *See id.* at 12-14.  AGS Lighting has sufficiently pled a claim for inducement of infringement, and Jesco's motion should be denied.

### C.    The Complaint Sufficiently Alleges Willful Infringement

A claim for willful infringement will survive a motion to dismiss when the patent holder has pled that the infringer had knowledge of the patent and of its infringement. *Jackson*, 2022 U.S. Dist. LEXIS 25894, at *18-19 ("To plead a claim of willful infringement, the complaint must allege that the accused infringer knew of the patent-in-suit, and knowingly or intentionally infringed the patent after acquiring that knowledge." (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378–79 (Fed. Cir. 2020))).  "[A]ctual knowledge of infringement or the infringement risk is not necessary to plead a claim for willful infringement," but a party must

16

adequately allege "factual circumstances in which the patents-in-suit [are] called to the attention of [the alleged infringer]." *St. Clair Intellectual Prop. Consultants, Inc. v. Hewlett-Packard Co.*, No. 10-425- LPS, 2012 U.S. Dist. LEXIS 42749, at *6-7 (D. Del. Mar. 28, 2012).

As set forth above, AGS Lighting's October 31, 2023, pre-suit letter was sufficient to call the '302 patent to Jesco's attention and to put Jesco on notice of its infringement.  That letter specifically identified the LIN product and noted that AGS believed that Jesco was infringing the '302 patent.  D.I. 1-7; *Supra* Section VI.B.1.  AGS also alleged that  "Jesco was aware of and has been on notice of the '302 patent and on information and belief, its infringement of that patent before the filing of this Complaint, and its infringement has been willful and egregious.  Jesco has been aware of the '302 patent since no later than AGS Lighting's letter dated October 31, 2023." D.I. 1 ¶33; D.I. 1-7.

Courts in this district "have held that while the plaintiff must ultimately prove that the defendant's conduct was flagrant or egregious in order to establish willfulness, it is not necessary for the plaintiff to plead that element."  *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 700 F. Supp. 3d 189, 201 (D. Del. 2023) (Bryson, J.) (citing numerous cases). This makes sense because the facts bearing on willfulness are likely only available to plaintiffs through discovery.  *Id.* at 202. Like in *DSM*, AGS Lighting's willful infringement claim is sufficient for the pleading stage.  *See id.* at 201-03 (finding that allegations "on information and belief that Honeywell's infringement has been and continues to be deliberate, intentional, egregious, willful, and in reckless disregard of the valid patent claims of the '532 patent" without expansion of the allegations was enough to plead willful infringement.).

Jesco relies on *Dynamic Data Techs. v. Google LLC*, No. 19-1529-CFC, 2020 U.S. Dist. LEXIS 46285 (D. Del. Mar. 18, 2020), but *Dynamic Data* is inapposite because there was no

allegation that the defendant was informed of its alleged infringement prior to suit, and the pre-suit letter did not allege infringement of the patents-in-suit. *Id.* at *5. Similarly, in *Cellcontrol*, one district court in the Western District of Virginia found that plaintiff's pre-suit letter was "nonspecific yet overbroad," so it did not "provide a sufficient basis to plausibly plead knowledge of infringement." *CellControl, Inc. v. Mill Mt. Capital, LLC*, No. 7:21-cv-246, 2022 U.S. Dist. LEXIS 35682, at *9-10 (W.D. Va. Feb. 28, 2022). AGS Lighting's allegations in the notice letter as to one patent and one product line are neither non-specific nor overbroad.

Jesco also argues that the willfulness allegations are "conclusory," citing to *Valmont Indus.*, *Osteoplastics*, and *Saphire Crossing*, but those cases are inapposite. In *Valmont Industries*, "the entire basis for Plaintiff's claim of willful infringement was Defendant's receipt and review of the Original Complaint." *Valmont Indus. v. Lindsay Corp.*, No. 15-042-LPS-CJB, 2018 U.S. Dist. LEXIS 9542, at *13-14 (D. Del. Jan. 22, 2018). That is not the case here because AGS Lighting alleges Jesco's pre-suit knowledge of the patent based on a letter received by Jesco more than a year before the suit was filed. In *Osteoplastics* which Jesco attached as Exhibit B to its brief, this Court granted a motion to dismiss a willful infringement claim based on pre-suit knowledge "because the amended complaint and attached correspondence are not clear as to which Defendant or Defendants the pre-suit letter was addressed and Plaintiff [had] not alleged that Defendants operate as a group of companies." D.I. 11, Ex. B at 4. That is far from the situation here where the pre-suit letter was directly addressed to Jesco. D.I. 1-7. Finally, in *Sapphire Crossing*, this Court found that the plaintiff barely referenced the term willful infringement in the prayer for relief and did not provide any other allegations to support a claim for willful infringement before the service of the original complaint. *Sapphire Crossing LLC v. Robinhood Mkts., Inc.*, No. 18-1717-MN-CJB, 2021 U.S. Dist. LEXIS 8256, at *18 (D. Del. Jan. 15, 2021). This was compounded by

the fact that the patent expired on the same day that the complaint was served, which this Court found could be the most *de minimis* claim of willful infringement in the Court's history, prompting dismissal of the willful infringement claim with leave to amend. *Id.* at *19. Nothing like that occurred here. Jesco does not cite a single case supporting its argument. The Court should decline Jesco's attempt to impose such a heavy burden before litigation even commences. AGS Lighting has sufficiently pleaded a claim for willful infringement, and Jesco's motion should be denied.

## VII.    CONCLUSION

For the foregoing reasons, AGS Lighting respectfully requests that this Court deny Jesco's Motion to Dismiss. In the alternative, if the Court grants Jesco's motion in part or in whole, AGS Lighting requests leave of Court pursuant to Fed. R. Civ. P. 15(a)(2) to file a first amended complaint.

<table>
<tr><td></td><td>/s/ Andrew E. Russell</td></tr>
<tr><td></td><td>Andrew E. Russell (No. 5382)</td></tr>
<tr><td></td><td>Lindsey M. Gellar (No. 7202)</td></tr>
<tr><td>OF COUNSEL:</td><td>SHAW KELLER LLP</td></tr>
<tr><td>Kevin E. Cadwell</td><td>I.M. Pei Building</td></tr>
<tr><td>Lisa M. Thomas</td><td>1105 North Market Street, 12th Floor</td></tr>
<tr><td>Brad S. Bowling</td><td>Wilmington, DE 19801</td></tr>
<tr><td>CADWELL CLONTS REEDER & THOMAS LLP</td><td>(302) 298-0700</td></tr>
<tr><td>5373 W. Alabama Street, Suite 457</td><td>arussell@shawkeller.com</td></tr>
<tr><td>Houston, TX 77056</td><td>lgellar@shawkeller.com</td></tr>
<tr><td>(713) 360-1560</td><td>*Attorneys for Plaintiff AGS Lighting*</td></tr>
<tr><td></td><td>*Management LLC*</td></tr>
<tr><td>Dated: April 10, 2025</td><td></td></tr>
</table>